```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERIN S. CONNELL f/k/a ERIN WROBLEWSKI,

                          Plaintiff,

          v.                                              5:15-CV-1453
                                                             (FJS)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____
```

| APPEARANCES | OF COUNSEL |
|---|---|
| **ERIN S. CONNELL**<br>Chittenango, New York 13037<br>Plaintiff *pro se* | |
| **SOCIAL SECURITY ADMINISTRATION**<br>**OFFICE OF REGIONAL**<br>**GENERAL COUNSEL – REGION II**<br>26 Federal Plaza – Room 3904<br>New York, New York 10278<br>Attorneys for Defendant | **KRISTINA D. COHN, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Erin S. Connell f/k/a Erin Wroblewski, proceeding pro se, brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for benefits. *See generally* Dkt. Nos. 1, 16. Pending before the Court are the parties' cross-

motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 16, 19.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff applied for benefits on January 30, 2012, alleging disability as of March 15, 2011. *See* Administrative Record ("AR") at 70. The Social Security Administration denied Plaintiff's applications on May 25, 2012. *See id.* at 77. Plaintiff filed a timely request for a hearing on June 25, 2012. *See id.* at 85. A video hearing was held on February 20, 2014, before Administrative Law Judge Joseph L. Brinkley ("ALJ"). *See id.* at 13. Attorney Timothy J. McMahon represented Plaintiff at the hearing. *See id.*

On July 18, 2014, the ALJ issued a written decision in which he made the following findings "[a]fter careful consideration of the entire record . . . ."

1) Plaintiff has not "engaged in substantial gainful activity since March 15, 2011, the alleged onset date."
2) Plaintiff "has the following severe impairments: osteoporosis; fibromyalgia variant/diffuse pain syndrome; thoracic strain; cervical radiculopathy; degenerative disc disease; palpitations with history of tachycardia; major depressive disorder; post-traumatic stress disorder (PTSD); borderline personality disorder; and panic disorder with agoraphobia."
3) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."
4) Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b) except that the claimant: can frequently use the bilateral upper extremities to handle, grasp, finger and feel; can occasionally lift/reach overhead or push/pull with the bilateral upper extremities; can occasionally climb ramps/stairs, balance, kneel, stoop, crawl, and crouch; should never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to environmental irritants and humidity, wetness, vibrations, extreme heat or cold temperatures, and workplace hazards; should be limited to simple, routine, repetitive tasks; should have no physical contact with public or coworkers and can occasionally engage in nonphysical contact with these individuals; and should not engage in team work; can understand & carry out very simple written/oral work related instructions; can exercise simple

> judgment in the work place; can complete a simple work schedule; and should be limited to low-stress to [sic] work that by its nature does not require production [sic] high volume quotas and fast paced assembly line jobs."
> 5) Plaintiff "is capable of performing past relevant work as a (2) cleaner, D.O.T. 323.687-014, light, svp 2 (full-time)."
> 6) Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 15, 2011, through the date of this decision."

*See* AR at 15-24 (citations omitted).

The ALJ's decision became the Commissioner's final decision on October 20, 2015, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review.[1] *See id.* at 1-3. Plaintiff then commenced this action on December 18, 2015. *See* Dkt No. 1. In her complaint, Plaintiff filed a letter explaining her condition and why she believes she is disabled. *See id*. On June 9, 2016, Plaintiff filed new medical records and a copy of the same letter. *See generally* Dkt. No. 16. Defendant filed a brief on August 13, 2016, arguing that the ALJ's decision was supported by substantial evidence and should be affirmed. *See* Dkt. No. 19.

Plaintiff's letter, construed liberally, disagrees with the ALJ's decision that she is able to perform her past relevant work. *See* Dkt. No. 16 at 10 (stating, "I do not feel that I could in any way shape or form function in a work environment"). Moreover, Plaintiff limits her discussion to her mental issues including her anxiety, depression, borderline personality disorder, and loss of memory. In other words, Plaintiff argues that there is not substantial evidence in the record to support the ALJ's residual functional capacity determination and his decision that she can perform work as a cleaner.

---

[1] In Plaintiff's request for review, she submitted additional records the ALJ had not considered. *See* AR at 4 (noting submission of EX. "30F").

## III. DISCUSSION

Before addressing the merits of the ALJ's decision, the Court must consider whether it can perform meaningful review of the record due to the new evidence that Plaintiff has submitted. In this regard, the Court must first determine whether the evidence Plaintiff submitted to the Appeals Council, after the ALJ's decision, warrants remand because it contradicts the ALJ's decision and whether the new evidence Plaintiff submitted to the Court in this proceeding warrants remand to the ALJ. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

After obtaining a negative decision from the ALJ, a claimant "may request" that the Appeals Council review an ALJ's decision. *See* 20 C.F.R. § 404.967. When a claimant requests such review, the Appeals Council "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge." *Id*. The Appeals Council will grant a claimant's request for review rather than deny or dismiss the request if

(1) There appears to be an abuse of discretion by the [ALJ];

(2) There is an error of law;

(3) The action, findings, or conclusions of the [ALJ] are not supported by substantial evidence; [or]

(4) There is a broad policy or procedural issue that may affect the general public interest[.]

20 C.F.R. § 404.970(a).

Furthermore, the regulations specifically permit claimants to submit additional evidence to the Appeals Council that was not before the ALJ. *See* 20 C.F.R. §§ 404.968, 404.970(b). If a claimant does so, the Appeals Council determines whether the evidence "relates to the period on

- 4 -

or before the date of the [ALJ's] decision" and whether it is "new and material." 20 C.F.R. § 404.970(b). Evidence is new if it is not "'merely cumulative of what is already in the record'" and is material if the new evidence is relevant, probative, and provides a reasonable possibility that the new evidence could change the Commissioner's decision. *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (quotation and other citation omitted); *see also Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (quotation omitted).

The Appeals Council is required to consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision" and must "then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Perez*, 77 F.3d at 45 (quoting § 404.970(b)) (other citation omitted). "Therefore, even when the Appeals Council declines to review a decision of the ALJ, it reaches its decision only after examining the entire record, including the new evidence submitted after the ALJ's decision." *Id.* In other words, "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Id.* Accordingly, the court's role is to review the entire administrative record, which includes the new evidence, to decide whether the Commissioner's decision is supported by substantial evidence. *See id.*; *see also Sears v. Colvin*, No. 8:12-CV-570, 2013 WL 6506496, *5 (N.D.N.Y. Dec. 12, 2013) (stating, "[i]f the Appeals Council fails to consider new, material evidence, 'the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence'" (quotation omitted)); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014) (summary order) (supporting the Appeals Council's decision declining review because new evidence "did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case").

The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review.'" *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (summary order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

In this case, the Appeals Council acknowledged that it had reviewed the new evidence but did not provide any reasons for its conclusion that, despite this new evidence, substantial evidence supported the ALJ's decision. *See* AR at 1, 4. The new evidence that Plaintiff submitted to the Appeals Council included treatment notes from Dr. Maroldo on July 8, 2014, and treatment with, among others, Dr. Reddy at St. Joseph's Hospital on January 7, 2014, February, 18, 2014, March 11, 2014, April 1, 2014, May 13, 2014 and July 1, 2014. *See* AR at 695-736, EX. "30F."

Plaintiff visited Dr. Maroldo's office on July 8, 2014, to follow-up on her treatment from a year earlier.[2] *See* AR at 697. During the visit, Dr. Maroldo noted that Plaintiff had extreme anxiety prior to her appointment because the first time they had met Plaintiff had not told him

---

[2] Plaintiff treated with Dr. Maroldo on July 18, 2013, for a new patient evaluation of cognitive impairment. *See* AR at 535-38. In reaching his decision, the ALJ afforded Dr. Maroldo's opinion from July 18, 2013 "great weight." *See id.* at 21.

that her brother and uncle had sexually molested her when she was six years old. *See id*. Dr. Maroldo's notes indicate that Plaintiff was sobbing throughout most of the meeting and had been having significant problems with her mother. *See id*. at 697-98. Furthermore, during the 2014 visit, Plaintiff stated that going to group therapy made her symptoms worse. *See id*. at 697. Finally, Dr. Maroldo confirmed that Plaintiff's memory loss was psychological, not neurological. *See id*. at 698.

Dr. Maroldo's treating notes regarding Plaintiff's July 8, 2014 visit are generally consistent with the ALJ's decision. One minor contradiction is that Plaintiff reported group therapy made her symptoms worse whereas the ALJ credited Plaintiff's ability to attend group therapy as showing that she was able to leave her home and be in crowds. *See id.* at 22. However, the ALJ ultimately concluded, in determining Plaintiff's RFC, that she should not engage in teamwork and could only "occasionally" engage in nonphysical contact with coworkers or the public. *See id.* at 17. Furthermore, Dr. Maroldo's treating notes only reflect Plaintiff's subjective complaints that were documented elsewhere. Thus, the Court concludes that this new evidence, by itself, does not justify remand. *See Hutchinson v. Colvin*, No. 6:14-CV-787, 2016 WL 843376, *5 (N.D.N.Y. Mar. 1, 2016).

However, in addition to Dr. Maroldo's July 8, 2014 treatment notes, Plaintiff submitted treatment notes from St. Joseph's Hospital to the Appeals Council.[3] *See id.* at 703-36. Plaintiff complained of being overwhelmed. *See id.* at 705. Plaintiff also complained that she had difficulty grocery shopping. *See id.* These treating records discuss Plaintiff's challenging home life and past abuses from family and former relationships. *See id*. at 706. The records also

---

[3] Treatment dates were on January 7, 2014, February, 18, 2014, March 11, 2014, April 1, 2014, May 13, 2014 and July 1, 2014. *See* AR at 703-36.

- 7 -

indicate that Plaintiff hears voices, including during the intake, which make it difficult for her to have conversations with others.[4] *See id.* at 705-06. Further, the treatment notes state Plaintiff was consistently taking her medication. *See id.* at 714, 718, 724. Plaintiff's insight was marked between poor and good, and her judgment was marked between fair and good. *See id.* at 715, 723, 731. In multiple places, it is noted that Plaintiff was angry and/or intense. *See id.* at 713, 715, 716, 730. On April 1, 2014, Plaintiff was supposed to be discharged from care at St. Joseph's Hospital; but, due to her struggles establishing relationships with providers, low functioning, and remaining symptoms, she was not discharged. *See id.* at 719. These records further indicate that she missed several appointments with providers for other medical reasons. *See id.* at 720-21. Finally, these records demonstrate that Plaintiff's symptoms continued throughout treatment. *See id.* at 732-33.

The treatment notes from St. Joseph's Hospital paint a different picture than the one the ALJ provides. In his decision, the ALJ noted that, "[b]y January 2013, the [Plaintiff] reported symptom control" and progress. *See id.* at 20. Thus, the ALJ stated, "it is unclear how the [Plaintiff] could report such difficulty going out of her home, when she was able to go to doctor's appointments, was cooperative during most examinations, and even attended group therapy sessions." *See id.* To the contrary, the St. Joseph's Hospital records show that Plaintiff's symptoms were getting worse despite Plaintiff consistently taking medication.

Had the ALJ reviewed these records, the Court finds that he might have reached a different conclusion. For example, the ALJ gave Dr. Iosileveck's medical opinion limited weight because there were inconsistencies in the treatment notes and because Dr. Iosileveck last

---

[4] Like the memory loss, "the reported delusions and incongruent thought process is likely better explained by psychotic features of her major depression," rather than neurological issues. *See* AR at 712.

saw the Plaintiff in August 2013.[5] *See id.* at 21. However, Dr. Iosileveck's treatment notes are consistent with Plaintiff's continued treatment at St. Joseph's Hospital. Furthermore, the ALJ discounted Dr. Iosileveck's letter stating Plaintiff could not work because it included no objective findings to support his conclusory remarks. *See id.* at 21-22. However, just after Dr. Iosileveck issued that letter in December 2013, Plaintiff began treatment at St. Joseph's Hospital, complaining of nearly identical symptoms. Thus, because the ALJ based his decision in part on a lack of corroboration in Plaintiff's symptomology, the Court finds that a remand is appropriate to consider this additional evidence that appears to confirm Plaintiff's severe mental impairments. *See Lesterhuis v. Colvin*, 805 F.3d 83, 88 (2d Cir. 2015) (holding that the ALJ should determine what weight to afford medical evidence on remand).

Furthermore, if the ALJ were to give the St. Joseph's Hospital treating notes great weight, it may very well be dispositive based on the additional record evidence. Uncontroverted testimony from the Vocational Expert stated that, if Plaintiff were off-task 10% of the time during an eight-hour work day or if she could not perform low-stress work, it would eliminate her ability to perform her past relevant work. *See* AR at 68. Since the St. Joseph's Hospital records consistently label Plaintiff as erratic, labile, with poor insight, and continuing symptoms, the ALJ might very well find that Plaintiff would be unable to perform low stress work or to be on task. Thus, the Court finds that the Appeals Council erred when it determined that the new evidence that Plaintiff submitted was insufficient to trigger review of the ALJ's decision.

---

[5] Furthermore, the new St. Joseph's Hospital treatment notes indicate that Dr. Iosilevick co-signed Plaintiff's January 7, 2014 intake form. *See* AR at 712.

Moreover, the evidence that Plaintiff submitted to the Court includes two letters from Dr. Reddy claiming "100% disability." *See* Dkt. No. 16 at 2-3.[6] Defendant argues that the Court should disregard Dr. Reddy's letters because they are "inconsistent" with Dr. Reddy's treatment notes reporting "good attention/concentration, judgment, and insight." *See* Dkt. No. 19 at 27. Defendant's scant citations to the record do not necessarily contradict Dr. Reddy's conclusion that Plaintiff is disabled. Furthermore, as stated above, it is the ALJ's not the Court's function to first determine what, if any, weight to give to Dr. Reddy's opinions. *See Lesterhuis*, 805 F.3d at 88.

On the facts of this case, the ALJ's ultimate conclusion and credibility assessment is incomplete without a review of Plaintiff's continued history of treatment within the relevant time period. Thus, because the new evidence submitted to the Appeals Council and to the Court contradicts the ALJ's decision, remand is necessary. *See Perez*, 77 F.3d at 46; *see also*

---

[6] Unlike the evidence that Plaintiff submitted to the Appeals Council, the Court can consider the evidence that Plaintiff submitted for the first time to the Court only if it passes muster under the three-prong test announced in *Tirado*. *See Tirado*, 842 F.2d at 597; *see also Wilbon v. Colvin*, No. 15-CV-756-FPG, 2016 WL 5402702, *3 (W.D.N.Y. Sept. 28, 2016). At step one, the plaintiff must show that the evidence is "'"new" and not merely cumulative of what is already in the record.'" *Id*. (quotation omitted). At step-two, the plaintiff must show that the evidence is "material." *Id.* (citation omitted). To show "materiality" the evidence must be relevant to the time period for which benefits were denied, probative, and provide a "reasonable possibility that the new evidence would have influenced the Secretary to decide [Plaintiff's] application differently." *Id*. (citation omitted). Finally, at step-three, the plaintiff must show "good cause" for failing to present the evidence earlier. *Id*. (citation omitted).

In this case, it is immaterial that the evidence that Plaintiff submitted to the Court was generated after the ALJ decision because it "directly supports many of [Plaintiff's] earlier contentions regarding [her] condition." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). Furthermore, Dr. Reddy's letter provides an assessment of Plaintiff's condition while under her control prior to the ALJ's final decision. Moreover, Dr. Reddy's assessment "suggests that, during the relevant time period, [Plaintiff's] condition was far more serious than previously thought[.]" *Id*. Therefore, the Court finds that it may consider Dr. Reddy's letter.

*Lesterhuis*, 805 F.3d at 88; *Sobolewski v. Apfel*, 985 F. Supp. 300, 311 (E.D.N.Y. 1997); 42 U.S.C. § 405(g).

On remand the ALJ should consider whether the evidence contained in Exhibit 30F, as well as the letters from Dr. Reddy in which she stated that Plaintiff is 100% disabled, alters his judgment.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No 16, is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 19, is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision is **REVERSED** and this matter is **REMANDED** to the ALJ for further proceedings consistent with this Memorandum-Decision and Order pursuant to sentence four of the Act[7]; and the Court further

---

[7] A sentence four as opposed to a sentence six remand is appropriate because the principal error in this case is the Appeals Council's failure to meaningfully review evidence submitted to it for the first time. *See Sears v. Colvin*, No. 8:12-CV-570, 2013 WL 6506496, *4 (N.D.N.Y. Dec. 12, 2013) (holding that evidence submitted to Appeals Council is not "'newly acquired evidence' as contemplated by sentence six," therefore a sentence four remand is appropriate); *see also Djuzo v. Comm'r of Soc. Sec.*, No. 5:13-CV-272, 2014 WL 5823104, *5 & n.12 (N.D.N.Y. Nov. 7, 2014) .

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

Dated: January 18, 2017
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge